UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL ENRIQUE DIAZ, | No. 2:15-cv-2083 GEB KJN P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| ASSOCIATE WARDEN HURLEY, et al., | |
| Defendants. | |

I. <u>Introduction</u>

Plaintiff is a state prisoner, proceeding without counsel. On July 3, 2017, defendants Hurley, Rodriguez, Hall and Farmer[1] filed a motion to revoke plaintiff's in forma pauperis status under 28 U.S.C. § 1915(g), and to dismiss this complaint for failure to state a claim, or on the grounds that defendants are entitled to qualified immunity. As discussed below, the undersigned finds that plaintiff has sustained three strikes under § 1915(g). Because plaintiff fails to plausibly demonstrate he faced imminent danger of serious physical injury at the time he filed his complaint, the undersigned recommends that defendants' motions be granted; plaintiff's in forma pauperis status be revoked and the complaint dismissed; and that plaintiff be required to pay the filing fee, and to file an amended complaint thirty days after he pays the filing fee.

---

[1] Defendant Farmer was incorrectly identified as "Farmar" in the complaint. (ECF No. 22 at 1.)

1

II. Motion to Revoke In Forma Pauperis Status

    A. In Forma Pauperis Statute

The Prison Litigation Reform Act of 1995 ("PLRA") permits a federal court to authorize the commencement and prosecution of any suit without prepayment of fees by a person who submits an affidavit indicating that the person is unable to pay such fees. However,

> [i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

This "three strikes rule" was part of "a variety of reforms designed to filter out the bad claims [filed by prisoners] and facilitate consideration of the good." Coleman v. Tollefson, 135 S. Ct. 1759, 1762 (2015) (quoting Jones v. Bock, 549 U.S. 199, 204 (2007)). If a prisoner has "three strikes" under § 1915(g), the prisoner is barred from proceeding in forma pauperis unless he meets the exception for imminent danger of serious physical injury. Andrews v. Cervantes, 493 F.3d 1047, 1052 (9th Cir. 2007). To meet this exception, the complaint of a "three-strikes" prisoner must plausibly allege that the prisoner was faced with imminent danger of serious physical injury at the time his complaint was filed. See Williams v. Paramo, 775 F.3d 1182, 1189 (9th Cir. 2015) (prisoner may also be required to demonstrate imminent danger at the time the notice of appeal is filed); Andrews, 493 F.3d at 1055.

    B. Three Strikes?

A review of the actions filed by plaintiff in this court[2] reveals that plaintiff is subject to 28 U.S.C. §1915(g) because he has sustained three § 1915(g) "strikes," which were all entered before plaintiff brought this action on October 1, 2015:[3]

---

[2] A court may take judicial notice of court records. See MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United States v. Howard, 381 F.3d 873, 876 n.1 (9th Cir. 2004).

[3] Plaintiff signed his complaint on October 1, 2015. Under the mailbox rule, such date is used as

Diaz v. Vasquez, No. 1:12-cv-0732 SAB dismissed February 25, 2013, for failure to state a claim;

Diaz v. R. Diaz, No. 1:12-cv-1296 AWI SAB, dismissed September 4, 2014, for failure to state a claim; and

Diaz v. R. Diaz, No. 1:13-cv-0453 SKO, dismissed July 28, 2014, for failure to state a claim.

On December 19, 2007, plaintiff's appeal from Diaz v. State of California, No. 2:04-cv-2375 MCE JFM, was dismissed as not taken in good faith. In addition, in Diaz v. Sherman, No. 1:13-cv-1627 LJO MJS, plaintiff's in forma pauperis status was revoked on August 5, 2016.

Here, plaintiff does not dispute that he has suffered at least three strikes under the PLRA. (ECF No. 33.) Thus, unless plaintiff can demonstrate he was facing imminent danger of serious physical injury at the time he filed his complaint, plaintiff's in forma pauperis status should be revoked.

C. Imminent Danger?

Previously, the undersigned recommended that plaintiff's in forma pauperis status be revoked. (ECF No. 10.) However, plaintiff filed objections declaring he was under imminent threat of serious physical harm because he was denied ice at the work site during 100 degree weather by defendant Rodriguez and her supervisors, despite their knowledge that plaintiff is prescribed "hot" psychotropic medications, in violation of Coleman v. Wilson, No. 2:90-cv-0520 KJM DB (E.D. Cal.), and the Eighth Amendment. (ECF No. 14.) The recommendations were vacated. (ECF No. 15.)

Defendants now move to revoke plaintiff's in forma pauperis status on the grounds that plaintiff's allegations of imminent danger are not only conclusory and implausible, but are demonstrably false. (ECF No. 34 at 2.)

In his verified objections, plaintiff declared he was in imminent danger because when it was 100 degrees or more at his "job/work site," defendants denied plaintiff ice, which is required

---

the date the complaint was given to prison authorities for mailing. Houston v. Lack, 487 U.S. 266, 275-76 (1988) (pro se inmate filing dated from date inmate delivers it to prison authorities).

3

for mentally disabled inmates taking psychotropic medications under Coleman.[4] (ECF No. 14.) The attachments to plaintiff's complaint confirm that he worked as an inmate law library clerk inside California Medical Facility ("CMF"). (ECF No. 1 at 16, 18.) Plaintiff worked Tuesday through Saturday, 8:00 a.m. to 4:00 p.m. (ECF No. 18.) In his verified opposition, plaintiff declares that at the time he filed his complaint, he was in imminent danger of serious physical harm or injury because he was denied "ice in 90+ to 100+ degree temperatures in the law library." (ECF No. 33 at 1.) Plaintiff argues that he is subject to an ongoing risk of danger which continued from May 2015 until June 17, 1016, when he was terminated from his law library job.[5] (ECF No. 33 at 2, 5.)

　　　　　　　　1. Legal Standards - "Imminent Danger"

Because plaintiff has sustained three strikes, plaintiff is precluded from proceeding in forma pauperis in this action unless he is "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). The availability of the imminent danger exception turns on the conditions a prisoner faced at the time the complaint was filed, not at some earlier or later time. See Andrews, 493 F.3d at 1053. "[A]ssertions of imminent danger of less obviously injurious practices may be rejected as overly speculative or fanciful." Id. at 1057 n.11. Imminent danger of serious physical injury must be a real, present threat, not merely speculative or hypothetical. To meet his burden under § 1915(g), an inmate must provide "specific fact allegations of ongoing serious physical injury, or a pattern of misconduct evidencing the likelihood of imminent serious physical injury." Martin v. Shelton, 319 F.3d 1048, 1050 (8th Cir. 2003). "Vague and utterly conclusory assertions" of harm are insufficient. White v. Colorado, 157 F.3d 1226, 1231-32 (10th Cir. 1998). That is, the "imminent danger" exception is available "for genuine emergencies," where

---

[4] The California Medical Facility was not part of the Coleman class action, but the CDCR applies the heat plan required under Coleman to all California state prisons, including CMF, and is in force from May 1 through October 31 of each year. (ECF Nos. 22-2 at 1-2; 22-3.)

[5] Despite plaintiff's reference to declarations by inmates Peets and Watkins (ECF No. 33 at 2), no such declarations were filed with plaintiff's opposition, his prior objections, or his complaint (ECF Nos. 1, 14, 33). Similarly, plaintiff claims he filed a writ of mandate in the Solano County Superior Court, but he failed to provide a copy of the document, or demonstrate how such filing establishes he was subject to imminent harm on October 1, 2015. (ECF No. 33 at 4.)

"time is pressing" and "a threat . . . is real and proximate." Lewis v. Sullivan, 279 F.3d 526, 531 (7th Cir. 2002). Where serious allegations of imminent danger are disputed, district courts may hold a hearing or rely on affidavits, depositions, or other records to resolve the issue. Taylor v. Watkins, 623 F.3d 483, 485 (7th Cir. 2010) ("it has never been the rule that courts must blindly accept a prisoner's allegations of imminent danger[;] . . . when a defendant contests a plaintiff's claims of imminent danger, a court must act to resolve the conflict."); (Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997), overruled on other grounds, Abdul-Akbar v. McKelvie, 239 F.3d 307 (3d Cir. 2001) (*en banc*) (prisoner's allegation of imminent danger must be credited unless the element of imminent danger is challenged).

### 2. Discussion

Defendants rebut plaintiff's claim of imminent danger by providing the declaration of C. Vanenburg, a Correctional Counselor II, currently assigned as Litigation Coordinator and the Heat Plan Coordinator for CMF for the last two years. (ECF No. 22-2.) Vanenburg provided a copy of CMF's Heat Plan Local Operating Procedure for 2015, which CMF uses to implement the CDCR Heat Plan. (ECF No. 22-3.) Vanenburg declares that under CMF's Heat Plan, inside and outside temperatures are monitored and recorded from May 1 through October 31 each year. (ECF No. 22-2 at 2.)

> Cooling measures are only required for inmates taking heat alert medications when temperatures exceed 90 degrees Fahrenheit in the place where the inmate is located. Cooling measures are only required for heat plan inmates located inside buildings when the inside temperature exceeds ninety degrees.

(ECF No. 22-2 at 2.) Vanenburg provided the temperature logs for July 1, 2015, through October 31, 2015, from second and third watches at CMF. (ECF No. 22-4 - 22-7.) The law library where plaintiff worked is located in Unit IV, adjacent to Y-Dorm, which shares air vents with the library, and Y-Dorm is one of the monitoring locations for inside temperatures. Under CDCR's heat plan, inside temperatures are recorded every three hours, unless the outside temperature is 90 degrees or higher, then inside temperatures are recorded every hour, until the outside temperature falls below 90 degrees. (ECF No. 22-2 at 2.)

////

The temperature logs reflect that the inside temperature in Y-Dorm did not exceed 90 degrees from July through October of 2015. (ECF Nos. 22-2 - 22-7.) Thus, because plaintiff's work area did not exceed 90 degrees, cooling measures were not required for heat plan inmates working in the law library. (ECF No. 22-2 at 2.)

Plaintiff does not rebut the evidence that his work area temperature did not exceed 90 degrees from July through October of 2015. Rather, plaintiff simply declares he faced imminent danger "[d]ue to the denial of ice in 90+ to 100+ degree temperatures in the law library." (ECF No. 33 at 1.) On October 1, 2015, the date he constructively filed the instant complaint, the inside temperatures at Y-Dorm were recorded as 66, 68, and 70. (ECF No. 22-7 at 63.) Thus, plaintiff did not face imminent danger from such temperatures at the time he filed the instant complaint. The highest temperature recorded in Y-Dorm in July was 86 degrees, on July 1, 2 and 30, 2015. (ECF No. 22-4 at 4, 60, 63.) The highest temperature recorded in Y-Dorm in August was 85 degrees, on August 16, 17, and 27, 2015. (ECF No. 22-5 at 10, 30, 32.) Because such temperatures were below the 90 degree threshold, no cooling measures were required.

Plaintiff argues that he was granted leave to proceed in other cases where he was found to be under imminent danger. (ECF No. 33 at 2.) For example, in case No. 2:14-cv-2705 JAM CKD, plaintiff challenged his ability to obtain diabetic snacks which placed him in imminent danger of adverse consequences due to his diabetes. But whether or not plaintiff met the imminent danger standard in other cases is not pertinent. Rather, the issue here is whether plaintiff faced imminent harm at the time he filed the instant complaint. Moreover, plaintiff's underlying allegations concern retaliation and do not pose a risk of imminent harm. Similarly, plaintiff's reliance on other, non-party prisoners and their situations (ECF No. 33 at 3) are not relevant, because the issue is the danger <u>plaintiff</u> allegedly faced on October 1, 2015. Finally, plaintiff's new conclusory allegation that he has been denied an unidentified surgery since May of 2015 (ECF No. 33 at 5), is also insufficient to satisfy the imminent danger standard. "Vague and conclusory assertions regarding withheld medical treatment are insufficient to satisfy the imminent danger standard." <u>Manago v. Gonzalez</u>, 2012 WL 439404, at *2 (E.D. Cal. Feb. 9, 2012), vacated June 20, 2012 (on grounds that erroneous gang validation put prisoner at imminent

risk from documented enemies) (citations omitted).  Moreover, despite being fully aware of his obligation to demonstrate imminent danger, as evidenced by his 2014 case, plaintiff failed to raise this new allegation in the instant complaint, or in his earlier objections (ECF No. 14).

Therefore, because plaintiff could not have faced imminent danger from inside temperatures of 66, 68, and 70 while working in the CMF law library on October 1, 2015, and the recorded temperatures inside Dorm-Y at CMF did not exceed 90 degrees from July to October of 2015, defendants' motion to revoke plaintiff's in forma pauperis status should be granted, and he should be required to pay the court's filing fee in full to proceed with this action.

III. Motion to Dismiss

In his complaint, plaintiff alleges, *inter alia*, that defendant Rodriguez retaliated against plaintiff for filing grievances concerning his failure to receive a pay raise, and by failing to provide ice when temperatures were over 100 degrees in the law library, in violation of the First and Eighth Amendments.  Plaintiff also alleges that defendants Hurley and Hall failed to train and discipline; that defendants Hurley, Hall and Farmer failed to take corrective measures, and that defendants Rodriguez, Hurley, Hall and Farmer discriminated against plaintiff.

A. Legal Standards Governing Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff.  Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999).  Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).  In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Furthermore, a claim upon which the court can grant relief must have facial plausibility.  Twombly, 550 U.S. at 570.

7

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Attachments to a complaint are considered to be part of the complaint for purposes of a motion to dismiss for failure to state a claim. Hal Roach Studios v. Richard Reiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). The court has an obligation to construe such pleadings liberally. Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (*en banc*). However, the court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that were not pled. Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

B. Qualified Immunity

In analyzing the qualified immunity defense, the court looks at the facts in the light most favorable to plaintiff. Johnson v. Bay Area Rapid Transit Dist., 724 F.3d 1159, 1168 (9th Cir. 2013). To determine whether an officer is entitled to qualified immunity, a court must decide (1) whether the facts alleged show the officer's conduct violated a constitutional right, and, if so, (2) whether that right was clearly established at the time of the officer's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 232, 236 (2009). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Lal v. California, 746 F.3d 1112, 1116 (9th Cir. 2014) (citation omitted), cert. denied, 135 S. Ct. 455 (2014).

"To determine that the law was clearly established, we need not look to a case with identical or even 'materially similar' facts." Serrano v. Francis, 345 F.3d 1071, 1077 (9th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739-41 (2002)). The question instead is whether the contours of the right were sufficiently clear that a reasonable official would understand that his actions violated that right. Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).

C. <u>Discussion</u>

Essentially, defendants contend that because the bulk of plaintiff's complaint is based on his claim that he was denied ice when it was over 100 degrees at his work site, and temperature records confirm that the inside temperature did not exceed 90 degrees in July or October of 2015, plaintiff's complaint should be dismissed, or defendants should be granted qualified immunity. Plaintiff did not address this portion of defendants' motion to dismiss.

Because the recorded temperatures inside Dorm-Y at CMF did not exceed 90 degrees from July to October of 2015, defendants are entitled to qualified immunity on all of plaintiff's claims based on his allegation that he was denied ice while working in the law library at CMF in 2015. No reasonable officer in defendants' position could believe that it was unconstitutional to deny ice to plaintiff when the inside temperature did not exceed 90 degrees because the CDCR court-approved heat plan only required cooling measures when temperatures exceeded 90 degrees inside the facility. Thus, defendants' motion to dismiss plaintiff's First and Eighth Amendment claims based on such heat-cooling claims should be dismissed.

In addition, defendants argue that plaintiff's claim that because he is Hispanic, he was denied a pay increase because of his race, is insufficient to state an equal protection claim based on invidious discrimination. (ECF No. 22 at 7.) To state a claim under the Equal Protection Clause for a member of a protected class, a plaintiff must demonstrate that (1) he is a member of a protected class and (2) that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class. <u>Barren v. Harrington</u>, 152 F.3d 1193, 1194-95 (9th Cir. 1998). "'Discriminatory purpose'. . . implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." <u>Personnel Adm'r of Mass. v. Feeney</u>, 442 U.S. 256, 279 (1979) (internal citation omitted). The undersigned has reviewed plaintiff's complaint and determined that plaintiff fails to allege sufficient facts to demonstrate that any of the named defendants acted with an intent or purpose to discriminate against plaintiff based upon race. Plaintiff is granted

////

9

leave to file an amended complaint, provided he can in good faith allege facts demonstrating that each defendant discriminated against plaintiff on the basis of race.

D. Leave to Amend

Because defendants are entitled to qualified immunity on plaintiff's claims concerning heat-cooling measures, and his equal protection claim is insufficiently pled, plaintiff's complaint is dismissed. Plaintiff is granted leave to file an amended complaint, thirty days after he pays the court's filing fee in full.

Defendants' motion to dismiss did not address plaintiff's claim that defendant Rodriguez denied him a pay raise because he filed administrative appeals, which stated a cognizable retaliation claim under the First Amendment. Plaintiff may renew such retaliation claim in any amended complaint. Plaintiff is reminded that in order to state a cognizable retaliation claim, he must allege facts addressing all elements of a retaliation claim: (1) an assertion that a state actor took some adverse action against an inmate, (2) because of (3) the inmate's protected conduct and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009) (quoting Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005)). "Retaliation against prisoners for their exercise of this right [to file grievances] is itself a constitutional violation, and prohibited as a matter of 'clearly established law.'" Brodheim, 584 F.3d at 1269 (citations omitted).

On the other hand, plaintiff is advised that he cannot state a Fourteenth Amendment due process claim based on the denial of a pay raise. A prisoner does not have a constitutionally protected liberty interest in receiving pay for work. Serra v. Lappin, 600 F.3d 1191, 1196 (9th Cir. 2009). Further, "an inmate has no constitutional right to any particular job status while incarcerated." Chapman v. Plageman, 417 F.Supp. 906, 907 (9th Cir. 1976). Indeed, prisoners have no constitutional right to hold a paid position in prison. Harris v. Sivley, 951 F.2d 360 (9th Cir. 1991) ("Prisoners have no constitutional right to a prison job.") (collecting cases).

As to plaintiff's related allegations against the remaining defendants, plaintiff is reminded of the following obligations when drafting his amended complaint.

10

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978) ("Congress did not intend § 1983 liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no affirmative link between the incidents of police misconduct and the adoption of any plan or policy demonstrating their authorization or approval of such misconduct). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Although supervisory government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior, Iqbal, 556 U.S. at 676, they may be individually liable under Section 1983 if there exists "either (1) [the supervisor's] personal involvement in the constitutional deprivation; or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989). The requisite causal connection between a supervisor's wrongful conduct and the violation of the prisoner's constitutional rights can be established in a number of ways, including by demonstrating that a supervisor's own culpable action or inaction in the training, supervision, or control of his subordinates was a cause of plaintiff's injury. Starr v. Baca, 652 F.3d 1202, 1208 (9th Cir. 2011); Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991). A plaintiff must also show that the supervisor had the requisite state of mind to establish liability, which turns on the requirement of the particular claim -- and, more specifically,

11

on the state of mind required by the particular claim -- not on a generally applicable concept of supervisory liability. Oregon State University Student Alliance v. Ray, 699 F.3d 1053, 1071 (9th Cir. 2012).

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions about which he complains resulted in a deprivation of plaintiff's constitutional rights. Rizzo, 423 U.S. at 371. Also, the complaint must allege in specific terms how each named defendant is involved. Id. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Id.; May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d at 743. Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient. Ivey, 673 F.2d at 268.

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This requirement exists because, as a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

Plaintiff is cautioned that he is not granted leave to add new claims or new defendants to any amended complaint. Plaintiff may not change the nature of this suit by alleging new, unrelated claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

Finally, failure to comply with the Federal Rules of Civil Procedure, this court's Local Rules, or any court order may result in this action being dismissed. See E.D. Cal. L.R. 110.

V. Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to revoke plaintiff's in forma pauperis status, and to dismiss the complaint (ECF No. 22), be granted;

12

2. Plaintiff's in forma pauperis status (ECF No. 6) be revoked;

3. Plaintiff be ordered to pay the $400.00 filing fee within twenty-one days from the date the district court adopts the instant findings and recommendations. Failure to timely pay the filing fee will result in the dismissal of this action;

4. Plaintiff's complaint be dismissed; and

5. Thirty days from the date plaintiff pays the filing fee in full, plaintiff shall file an amended complaint that complies with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice. The amended complaint must also bear the docket number assigned to this case and must be labeled "Amended Complaint." Failure to file an amended complaint in accordance with this order will result in the dismissal of this action.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 30, 2017

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/diaz2083.mtd.1915(g)

13